# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Phillip Smith,

    Petitioner

v.

F.N.U. Collins, et al.,

    Respondents

Case No.: 2:14-cv-00483-JAD-NJK

**Order Denying Petition
for Habeas Corpus**

Counseled habeas petitioner Phillip Smith brings this action under 28 U.S.C. § 2254 to challenge his 2011 Nevada state convictions after a jury trial for 17 counts that include attempted murder, burglary, robbery, first-degree kidnapping, and grand larceny—all stemming from a pair of residential armed robberies.[1] Having carefully reviewed Smith's petition on its merits, I deny relief.

## Background and Procedural History

On March 2, 2011, a jury in Nevada's Eighth Judicial District Court convicted Smith of a laundry list of charges stemming from a pair of residential armed robberies.[2] The trial judge sentenced Smith to 19 years to life in prison.[3] Smith appealed his convictions, and the Nevada

---

[1] ECF No. 15 (Second Amended Petition).

[2] ECF No. 16-2. Smith was convicted of: attempted murder with the use of a deadly weapon, battery with the use of a deadly weapon resulting in substantial bodily harm, two counts of burglary while in possession of a deadly weapon, two counts of conspiracy to commit robbery, assault with a deadly weapon, failure to stop on the signal of a police officer, robbery with the use of a deadly weapon of a victim 60 years of age or older, first-degree kidnapping with the use of a deadly weapon of a victim 60 years of age or older, coercion with the use of a deadly weapon, possession of a credit or debit card without the cardholder's consent, grand larceny, and possession of stolen property.

[3] *See id.*, ECF No. 1 at 2; ECF No. 15 at 1–3.

Supreme Court affirmed.[4] I appointed counsel to represent Smith in this federal habeas proceeding, and counsel filed a second-amended petition on December 9, 2014.[5] Respondents have answered the remaining 4 grounds.[6]

**Legal Standard for Federal Habeas Relief**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for this court's consideration of the petition in this case. If a state court has adjudicated a habeas corpus claim on its merits, a federal district court may only grant habeas relief on that claim if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[7] A state court acts contrary to clearly established federal law if it applies a rule contradicting the relevant holdings or reaches a different conclusion on materially indistinguishable facts.[8] And a state court unreasonably applies clearly established federal law if it engages in an objectively unreasonable application of the correct governing legal rule to the facts at hand.[9] Section 2254 does not, however, "require state courts to *extend*" Supreme Court precedent "to a new context

---

[4] ECF No. 17-3.
[5] ECF No. 15.
[6] ECF No. 46.
[7] 28 U.S.C. § 2254(d).
[8] *Price v. Vincent*, 538 U.S. 634, 640 (2003).
[9] *White v. Woodall*, 134 S. Ct. 1697, 1705–07 (2014).

2

where it should apply" or "license federal courts to treat the failure to do so as error."[10] The "objectively unreasonable" standard is difficult to satisfy;[11] "even 'clear error' will not suffice."[12]

Habeas relief may only be granted if "there is no possibility [that] fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents."[13] As "a condition for obtaining habeas relief," a petitioner must show that the state-court decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement."[14] "[S]o long as 'fairminded jurists could disagree' on the correctness of the state court's decision," habeas relief under Section 2254(d) is precluded.[15] AEDPA "thus imposes a 'highly deferential standard for evaluating state-court ruling,' . . . and 'demands that state-court decisions be given the benefit of the doubt.'"[16]

If a federal district court finds that the state court committed an error under § 2254, the district court must then review the claim de novo.[17] The petitioner bears the burden of proving

---

[10] *White*, 134 S. Ct. 1705–06.

[11] *Metrish v. Lancaster*, 569 U.S. 351, 357–58 (2013).

[12] *Wood v. McDonald*, 135 S. Ct. 1372, 1376 (2015) (per curiam) (citation omitted); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

[13] *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[14] *Id.* at 103.

[15] *Id.* at 101.

[16] *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations omitted).

[17] *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

3

by a preponderance of the evidence that he is entitled to habeas relief,[18] but state-court factual findings are presumed correct unless rebutted by clear and convincing evidence.[19]

**Analysis of Smith's Petition**

Smith's second amended petition contains six grounds, but two were dismissed—one because it was not cognizable in federal habeas, and one as unexhausted.[20] The four grounds that remain are: **ground 1**: Smith's due process rights under the Fifth, Sixth, and Fourteenth Amendments were violated because the evidence was insufficient to sustain his kidnapping conviction as the restraint of the victim was merely incidental to the robbery; **ground 4**: Smith's due process rights under the Fifth and Fourteenth Amendments and fair-trial rights were violated when a video of his arrest was admitted at trial; **ground 5**: Smith's Fifth, Sixth, and Fourteenth Amendment rights were violated when the trial court denied his pretrial motion to sever, preventing him from cross-examining his co-defendant, who voluntarily spoke with the police after the incidents; and **ground 6**: the cumulative effect of the errors in Smith's trial dictate relief. I consider each ground in turn.

**A.    Ground 1 –insufficiency of the kidnapping evidence**

In ground 1, Smith contends that his Fifth, Sixth, and Fourteenth Amendment due process rights were violated because the evidence presented at trial was insufficient to sustain his conviction for kidnapping of a victim aged 60 years or older because, under state law, any restraint of the victim was merely incidental to the robbery.[21] "The Constitution prohibits the

---

[18] *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).
[19] 28 U.S.C. § 2254(e)(1).
[20] ECF No. 32.
[21] ECF No. 15 at 7–8.

4

criminal conviction of any person except upon proof of guilt beyond a reasonable doubt."[22]  On federal habeas corpus review of a judgment of conviction under 28 U.S.C. § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[23]  "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."[24]  This court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution.[25]  Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence.[26]

Nevada Revised Statute 200.310 provides that first-degree kidnapping can include confinement for the purpose of robbery.  The Nevada Supreme Court clarified the circumstances that generally expose a defendant to dual convictions for robbery and kidnapping in *Mendoza v. State*,[27] explaining that dual convictions are appropriate if the restraint substantially increases the victim's risk of harm or substantially exceeds the restraint necessary to complete the associated crime:

> movement or restraint incidental to an underlying offense where restraint or movement is inherent, as a general matter, will not expose the defendant to dual criminal liability under either the first- or second-degree kidnapping statutes.  However, where the movement or restraint serves to substantially increase the risk of harm to the victim over and above that necessarily present in an associated offense, i.e., robbery, extortion, battery resulting in substantial bodily harm or sexual assault, or where the seizure, restraint or movement of the victim substantially exceeds that

---

[22] *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)).

[23] *Id*. at 324.

[24] *Id*. at 324 n.16.

[25] *Id*. at 326.

[26] *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[27] *Mendoza v. State*, 130 P.3d 176, 180 (Nev. 2006).

5

required to complete the associated crime charged, dual convictions under the kidnapping and robbery statutes are proper.[28]

At the trial of Smith and his co-defendant, victim Lyle Weston testified that he was 64 years old at the time of the incident.[29] He identified Smith as one of the two men who robbed him at gunpoint in his apartment. He recounted that when he answered a knock at his door, Smith asked him where building 14 was, and when Weston turned back to face Smith after pointing in the direction of building 14, he was "looking down the barrel of a gun [that Smith was pointing] right in [his] face."[30] Smith told Weston to back up into the apartment with his hands up, which Weston did. The two men made Weston sit in a chair in the living room, took his wallet and cell phone and covered his head with a t-shirt and a blanket so that he could not see. They asked him where any other phones were in the apartment, and Weston told them that there was a phone in each of the 2 bedrooms. Smith and his co-defendant tied Weston's hands and feet with appliance cords, with a cord between the 2 so that Weston could not really raise his hands. The intruders ransacked the apartment and removed items for about 1 ½ hours. They left Weston bound in those restraints and with his head covered when they finally exited.[31]

On direct appeal, the Nevada Supreme Court concluded that these circumstances created a risk of danger that substantially exceeded those present in a typical robbery:

> Smith challenges his dual convictions for kidnapping and robbery at the Capistrano Pines Apartments and argues that his kidnapping conviction should be reversed because it was incidental to the robbery. Dual convictions for robbery and kidnapping arising from the same course of conduct will not be sustained unless the restraint or movement of the victim "stand[s] alone with independent

---

[28] *Id.*

[29] Exh. 28, ECF No. 16-6 at 11–81.

[30] *Id.* at 22.

[31] Exh. 28 at 11–81.

6

significance from the act of robbery itself, create[s] a risk of danger to the victim substantially exceeding that necessarily present in the crime of robbery, or involve[s] movement, seizure or restraint substantially in excess of that necessary to its completion." *Mendoza v. State*, 122 Nev. 267, 275, 130 P.3d 176, 181 (2006). Here, after the robbery, the 64-year-old victim was left in his apartment with his head covered, his hands and feet tightly bound, and all of the phones disabled. We conclude that a rational juror could have inferred from these circumstances that the victim's physical restraints created a risk of danger substantially exceeding that necessarily present in the crime of robbery. Accordingly, Smith is not entitled to relief on this claim.[32]

Under the highly deferential AEDPA standard of review of the state-court rulings, I conclude that Smith has not demonstrated that the Nevada Supreme Court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor can I conclude that its decision was based on an unreasonable determination of the facts in light of the evidence presented in the state-court proceeding.[33] I therefore deny federal habeas relief on ground 1.

**B.  Ground 4—arrest video violated due-process and fair-trial rights**

Smith argues that his Fifth and Fourteenth Amendment due process and fair trial rights were violated when a video of his arrest was admitted at trial.[34] A video of the GPS and other surveillance conducted of the co-defendants the day of the robberies was admitted at trial.[35] A police officer who was present and followed Smith's vehicle during the incidents in question testified, describing the video as it was played. The video depicted GPS surveillance of Smith's

---

[32] Exh. 44 at 4.

[33] *See* 28 U.S.C. § 2254(d).

[34] ECF No. 15 at 12–14.

[35] Exh. 28, ECF No. 16-6 at 212–260.

7

vehicle as it traveled to and stopped at the two apartment complexes, led police on a high-speed chase, and ultimately crashed into a bus. As the officer described the video as it played, he said it showed officers removing Smith from the driver's side of his crashed vehicle and taking him into custody.

Smith testified at trial and denied committing the robberies.[36] He stated that he was at the first apartment complex to meet an individual who sold him some items, including two laptops, a TV, and an iPod. Later, he went home and drove around town on his motorcycle for a while. Then he drove his car to the second apartment complex to pick up his co-defendant. He testified that he never entered either apartment or committed the robberies, and when he noticed that unmarked police vehicles were following him, he tried to evade them because he did not know who was following him. He continued to flee when he knew it was the police pursuing him because, by that time, he was scared and not thinking clearly.[37]

The Nevada Supreme Court rejected this arrest-video claim on direct appeal, finding no plain error because Smith put his identity at issue and the video helped establish him as the perpetrator, plus, the jury instructions mitigated the prejudice:

> Smith contends that the admission of video footage showing Smith being taken into custody and placed in the back of a patrol car after he crashed into a bus following a high speed chase was inadmissible because its probative value was substantially outweighed by the danger of unfair prejudice, NRS 48.035, and its admission resulted in actual prejudice at trial. Smith failed to object to the admission of the video footage, and we review for plain error. NRS 178.602; *Sterling v. State*, 108 Nev. 391, 394, 834 P.2d 400, 402 (1992). The decision to exclude relevant evidence under NRS 48.035 is left within the district court's sound discretion. *Thomas v. State*, 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006). The State contends that the video footage helped to establish Smith's identity as the driver. We agree. Moreover, Smith also agreed when he argued that

---
[36] ECF No. 17-1 at 66–88.

[37] *Id*.

8

identity was at issue in his case. Accordingly, we cannot conclude that the district court plain erred by admitting the video. *Green*, 119 Nev. at 545, 80 P.3d at 95.

...Smith contends that the video showing him in custody in the back of a patrol car violated the constitutional presumption of innocence guaranteed by the United States and Nevada constitutions. *See Haywood v. State*, 107 Nev. 285, 287, 809 P.2d 1272, 1273 (1991). We disagree. A defendant is only presumed innocent until the contrary is proved. NRS 175.191. Before any evidence was presented, the district court explained to the jury that Smith was presumed innocent of all charges and that the State had the burden of proving each essential element of the crimes beyond a reasonable doubt. *See Leonard v. State*, 117 Nev. 53, 66, 17 P.3d 397, 405 (2001) (explaining that a jury is presumed to follow instructions). This admonishment included Smith's charge for failing to stop on the signal of a police officer. See NRS 484B.550.

The State was required to prove beyond a reasonable doubt that (1) Smith drove a vehicle, (2) was signaled by a police officer in a readily identifiable police department vehicle to stop, (3) Smith failed to stop or otherwise attempted to elude the officer, and (4) Smith operated the vehicle in a manner which is likely to endanger other persons or was the proximate cause of damage to the property. *Id*. The video footage challenged by Smith depicts several readily identifiable patrol cars with flashing red lights giving chase, a silver Honda that had just collided into the luggage compartment of a bus in the middle of an intersection, and Smith being taken out of the driver's seat of that vehicle and placed into a patrol car by police officers. Although we admit that this highly inculpatory video likely led to Smith's conviction for failing to stop on the signal of a police officer, we cannot say that Smith's conviction was the result of his fleeting appearance in the back of the patrol car. *See Gates v. Zant*, 863 F.2d 1492, 1501 (11th Cir. 1989) ("[A] defendant is not necessarily prejudiced by a brief of incidental viewing by the jury of the defendant in handcuffs."); *see also Deck v. Missouri*, 544 U.S. 622, 626 (2005) (prohibiting the "routine use of visible shackles during the guilt phase" (emphasis added)). Nor can we say that a jury might mistakenly use his appearance as evidence of his guilt on the other numerous charges against him or that a jury would assume that Smith remained in custody throughout his trial based on his arrest following the accident. *See Haywood*, 107 Nev. at 287-88, 809 P.2d at 1273. Moreover, even if Smith's brief appearance in the back of the patrol car was error, we are confident that it did not contribute to the verdict. *See Deck*, 544 U.S. at 635 (explaining that

this kind of error is not structural). Accordingly, Smith is not entitled to relief on this claim.[38]

As the state supreme court pointed out, this was a highly inculpatory video as to the many charges. Smith has not persuaded this court that a brief shot of police taking him into custody at the end of the video rose to a violation of his due-process and fair-trial rights. He has not demonstrated that the Nevada Supreme Court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor has he shown that its decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[39] Ground 4 is thus denied.

**C.  Ground 5—denial of severance request violated Fifth, Sixth, and Fourteenth Amendment rights**

In ground 5, Smith asserts that the trial court violated his Fifth, Sixth, and Fourteenth Amendment rights when it denied his pre-trial motion to sever. The joint trial, he contends, prevented him from cross-examining his co-defendant, who voluntarily spoke with police after the incidents.[40]

The trial court conducted a hearing on Smith's motion to sever.[41] His counsel argued that if the co-defendant elected not to testify, admission of the co-defendant's voluntary statements to police would inculpate Smith and violate the rule from *Bruton v. United States*.[42] The

---

[38] Exh. 44 at 6–8.
[39] *See* 28 U.S.C. § 2254(d).
[40] ECF No. 15 at 14–15.
[41] Exh. 35, ECF No. 17-2 at 36–39.
[42] *Bruton v. United States,* 391 U.S. 123 (1968).

10

prosecution responded that it would ask police witnesses what the co-defendant said about his own involvement only. The court concluded that Smith's Sixth Amendment and *Bruton* rights could be satisfied with appropriate redaction and appropriate direct examination, so it denied the motion to sever.[43]

Smith points to nothing in the trial record that reflects that any statements by his co-defendant were introduced at trial. Nor has this court been able to locate any.

Denying this claim on direct appeal, the Nevada Supreme Court reasoned that Smith had failed to show that his co-defendant's statements were confessions at all, let alone ones that ran afoul of *Bruton*:

> Smith contends that the district court erred by denying his motion to sever. Specifically, Smith argues that he was prejudiced by joinder because he was unable to cross-examine his codefendant about his codefendant's voluntary statement to police officers that Smith was driving the silver Honda on the day the crimes occurred. Smith contends that this voluntary statement created a *Bruton* problem. *See Bruton v. United States*, 391 U.S. 123 (1968). In order to have a *Bruton* problem, a nontestifying defendant's confession [that] inculpates his codefendant must be introduced into evidence. *Stevens v. State*, 97 Nev. 443, 445, 634 P.2d 662, 664 (1981); *see also Richardson v. Marsh*, 481 U.S. 200, 208 (1987) (explaining that codefendant's statement must clearly implicate defendant in wrongdoing, and that the implication must appear on the face of the statement itself). Although Smith cites to excerpts from his codefendant's voluntary statement, he does not explain how these statements amount to a confession or even allege that any of these excerpts were introduced at trial. *See* NRAP 28(a)(9)(A) (explaining that appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record in which the appellant relies"). Our review of the testimony reveals that Smith himself admitted to driving the vehicle throughout the entirety of his crime spree on direct examination. Moreover, even if the excerpts cited by Smith had been introduced in their entirety, amounted to a confession, and were error, we conclude that they were harmless. *See Harrington v. California*,

---

[43] *Id*.

11

395 U.S. 250, 254 (1969) (stating that *Bruton* violations are subject to harmless error review). Accordingly, Smith is not entitled to relief on this claim.[44]

As explained in the ground 4 discussion above, Smith testified that he was the driver of his car the day of the incidents all the way up through the bus crash. And it does not appear that any of the co-defendant's statements that would have inculpated Smith were introduced at trial. Smith has thus failed to demonstrate that the Nevada Supreme Court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Nor can I conclude that its decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.[45] I deny habeas relief for ground 5.

**D.    Ground 6—cumulative error**

Finally, Smith argues that he is entitled to habeas relief due to the cumulative effect of the errors that he alleges.[46] The Nevada Supreme Court denied this claim on direct appeal, stating that there were no errors to aggregate.[47] That conclusion was not unreasonable.[48] As this court has concluded that no basis for federal habeas relief, Smith's claim of cumulative error is also denied.

---

[44] Exh. 44 at 8–9.

[45] *See* 28 U.S.C. § 2254(d).

[46] ECF No. 15 at 15.

[47] Exh. 44 at 9.

[48] *See* 28 U.S.C. § 2254(d).

**Certificate of Appealability**

Because this is a final order adverse to the petitioner, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).[49] Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." For claims rejected on their merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[50] For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether the court's procedural ruling was correct.[51] Because I do not conclude that these standards are satisfied here, I decline to issue a certificate of appealability.

**Conclusion**

IT IS THEREFORE ORDERED that **the second-amended petition (ECF No. 15) is DENIED in its entirety.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED**.

IT IS FURTHER ORDERED that the Clerk of Court is directed to ENTER JUDGMENT accordingly and CLOSE THIS CASE.

Dated: March 23, 2019

_____
U.S. District Judge Jennifer A. Dorsey

---

[49] *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

[50] *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).

[51] *Id.*

13